**Kalima JENKINS, by her friend, Kamau AGYEI; Carolyn Dawson, by her next friend Richard Dawson; Tufanza A. Byrd, by her next friend, Teresa Byrd; Derek A. Dydell; Terrance Cason, by his next friend, Antoria Cason; Jonathan Wiggins, by his next friend, Rosemary Jacobs Love; Kirk Allan Ward, by his next friend, Mary Ward; Robert M. Hall, by his next friend, Denise Hall; Dwayne A. Turrentine, by his next friend, Sheila Turrentine; Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated; Appellees,**

**American Federation of Teachers, Local 691, Intervenor,**

**v.**

**STATE OF MISSOURI; Mel Carnahan, Governor of the State of Missouri; Bob Holden, Treasurer of the State of Missouri; Missouri State Board of Education; Peter Herschend, Member of the Missouri State Board of Education;**

Raymond McCallister, Jr., Reverend, Member of the Missouri State Board of Education; Susan D. Finke, President, Member of the Missouri State Board of Education; Thomas R. Davis, Member of the Missouri State Board of Education; Robert E. Bartman, Commissioner of Education of the State of Missouri; Gary D. Cunningham, Member of the Missouri State Board of Education; Rebecca M. Cook, Member of the Missouri State Board of Education; Sharon M. Williams, Member of the Missouri State Board of Education; Jacquelline Wellington, Member of the Missouri State Board of Education; Appellants,

School District of Kansas City; Walter L. Marks, Superintendent thereof, Appellees.

No. 93–3975.

United States Court of Appeals, Eighth Circuit.

Submitted March 31, 1994.

Decided May 3, 1994.

Michael J. Fields and Bart A. Matanic, Jefferson City, MO, for appellant.

David S. Tatel, Allen R. Snyder and Patricia A. Brannan, Washington, DC; Shirley W. Keller, Arthur A. Benson, III, Scott A. Raisher, Frederic O. Wickham, and Brian P. Wood, Kansas City, MO, for appellee.

Before McMILLIAN, Circuit Judge, HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

The State of Missouri again appeals, the second time in less than a year, an order of

the district court[1] approving *Milliken II*[2] quality education programs. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, 1993 WL 566488 (W.D.Mo. July 30, 1993). In this appeal of the programs ordered for the school years 1993–94 and 1994–95, the State asserts the same argument that we rejected with respect to the 1992–93 school year in *Jenkins v. Missouri*, 11 F.3d 755 (8th Cir. 1994) (*Jenkins IX*) (as amended on denial of rehearing), *rehearing en banc denied*, 19 F.3d 393 (8th Cir.1994). The State made only minor additions to the record the district court had already considered in earlier orders relating to the quality education issues and to the argument that these programs should be declared unitary under *Freeman v. Pitts*, —— U.S. ——, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992). The State also argues that one component of the quality education programs, the funding for the full-day kindergarten program, has been rendered redundant by the passage of Missouri Senate Bill 380, affecting the school foundation formula. We affirm the district court's order and its decision on the quality education programs.

When KCMSD moved to continue the *Milliken II* quality education programs for the school years 1993–94 and 1994–95, the State raised the *Freeman v. Pitts* argument, as it had with respect to the 1992–93 year. The court held a one-day hearing. KCMSD presented very abbreviated testimony from Dr. Arthur Rainwater that his earlier testimony[3] about the *Milliken II* quality education programs was unchanged—that there was substantial possibility for further improvement, and that the systems were working well. *Cf. Jenkins IX*, 11 F.3d at 765 (summarizing Dr. Rainwater's similar testimony at earlier hearing). The State presented no live witnesses on this issue, but filed a declaration from Dr. Terrance Stewart, essentially reiterating his testimony from the earlier hearing. *Cf. Jenkins IX*, 11 F.3d at 764–65 (summarizing Dr. Stewart's testimony at earlier hearing).

The district court in an order entered July 30, 1993 approved continuation of the *Milliken II* quality education programs for the school years 1993–94 and 1994–95.[4] The district court articulated its reasons for rejecting the *Freeman v. Pitts* argument in some detail. The district court found the State's arguments that these components were unitary to be unpersuasive. While the quality education components had been partially successful, they had not yet met the goals in their entirety. The State appeals again, relying on the same arguments it advanced in *Jenkins IX*.

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

2. *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). These programs included reduced class size, attainment and maintenance of AAA status, full-day kindergarten, early childhood education, extended day, effective schools, and district communications.

3. The district court held an extensive hearing on approval of the *Milliken II* quality education programs for the 1992–93 year, which we have described in *Jenkins IX*, 11 F.3d at 764. While KCMSD's motion to renew those programs was pending, *Freeman v. Pitts* was decided. The State then asked that the *Milliken II* quality education programs be declared unitary under the approach articulated in *Freeman* and *Board of Education v. Dowell*, 498 U.S. 630, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991). On June 17, 1992 the district court ordered continuation of the *Milliken II* programs for the 1992–93 year, and we affirmed. *See Jenkins IX*, 11 F.3d at 760. We cited as additional support for the district court's order its April 16, 1993 consideration of the *Freeman* issue in adopting the long range magnet renewal plan, and also the district court's July 30, 1993 order concerning the *Milliken II* programs. *Jenkins IX*, 11 F.3d at 761–62. We have ordered, on the State's motion, that the record before the court in *Jenkins IX* be made a part of the record before the court in this appeal.

4. At the time of our decision in *Jenkins IX*, we had before us that portion of the July 30, 1993 order dealing with salary issues, but the portion of the order relating to *Milliken II* programs had not been appealed. *See* 11 F.3d at 762. After the district court denied the State's motion for reconsideration on October 20, 1993, the State appealed on the *Milliken II* issues. During argument of *Jenkins IX* the parties did not refer to the July 30, 1993 order, nor was it mentioned in the argument of *Jenkins v. Missouri*, 13 F.3d 1170 (8th Cir.1993) (*Jenkins X*). In *Jenkins IX* we discussed the *Milliken II* quality education portion of this order insofar as it "fleshes out the meaning of the earlier district court orders." 11 F.3d at 762.

## I.

In *Jenkins IX*, we affirmed the June 17, 1992 order concerning the *Milliken II* quality education programs for 1992–93. We stated:

> The only evidence before the district court with respect to the degree of progress on elimination of vestiges of past discrimination was at best that a start had been made. The evidence on the record fell far short of establishing that such vestiges had been eliminated to the extent practicable. These tests, articulated in *Dowell* and *Freeman,* answer the State's argument that establishment of the programs by compliance with the court order is all that is required.

> · · · · ·

> The State did not try to prove that it has demonstrated a good faith commitment to the whole of the court's decree.

11 F.3d at 765 (citations omitted).

■ The record now before us relevant to the *Freeman* issue has been supplemented to only a minor degree since the *Jenkins IX* appeal. Examination of the record before the district court when it made its order of July 30, 1993, as well as a review of the record made before its June 17, 1992 order, demonstrate the validity of our conclusions in *Jenkins IX*: that the State did not try to prove a history of good faith commitment to the whole of the court's decree; that the only evidence before the district court was that at best a start had been made; and that the evidence fell short of establishing that the vestiges of past discrimination had been eliminated to the extent practicable. 11 F.3d at 765. The State essentially repeats its arguments in *Jenkins IX* and argues that *Jenkins IX* was wrongly decided. We reject the State's argument on the merits. The court en banc has denied rehearing in *Jenkins IX, see Jenkins v. Missouri,* 19 F.3d 393 (8th Cir.1994) (denying rehearing en banc). *Jenkins IX* governs our decision in this case on a record that is essentially identical on the *Freeman* issues.

There is still further reason why we must affirm. As our earlier opinion reflected, and as the record before us in this appeal demonstrates, the position of the State is that having implemented and funded these *Milliken II* programs for a seven year period, its obligation should end.[5] There can be no doubt that this was its position in *Jenkins IX,*[6] and it maintains the same position today.

---

5. The State says that its position in the district court was that *"Pitts* justified either an immediate or gradual return to the KCMSD of control and responsibility for the *Milliken II* programs." It summarized its argument by stating that it is "entitled to a declaration of unitary status with regard to the *Milliken II* quality education programs in place in the KCMSD." Further, "with regard to the quality of education component ... the State sought withdrawal of District Court supervision after presenting evidence of compliance with the desegregation decrees of the District Court."

6. The State argued in *Jenkins IX* that it had complied fully with the district court's desegregation decree as to the *Milliken II* programs, "and is entitled to have this aspect of [KCMSD] operations declared unitary, at least regarding the State's obligations." "Because of the State's record of full and satisfactory compliance with this aspect of the desegregation decrees and because the State can do no more to ensure provision of quality education and remedial programs to the KCMSD than it has already done by funding the programs, the State meets squarely this measure of 'unitariness' for the *Milliken II* aspects of the desegregation remedy." The State argued that "this Court should either declare the *Milliken II*

aspect of KCMSD's operations to be unitary" or reverse and remand for specific findings of facts.

Before the district court on the motion which led to *Jenkins IX,* the State first filed a rather general objection to the budget for the 1992–93 school year on February 7, 1992. After the decision in *Freeman,* the State filed a response with respect to this school year in which it stated: *"Pitts* supports the immediate elimination of the Year VIII [1992–93] programs as the first step in a phaseout process, the purpose of which is to ultimately totally reestablish local control over school district operations." "[T]he State believes the programs should be returned to local control with extraordinary funding ended now. In the alternative ... a brief phaseout period could be imposed, gradually increasing the KCMSD responsibility for continued implementation and actual funding of the annual budget programs through its local autonomy and local resources." "It will be up to the KCMSD to decide whether, in what form and to what extent, to continue the programs at issue." "The [c]ourt here can take the first step toward returning control of the KCMSD to the local authorities by terminating its supervision over these annual budget programs, and requiring the District to resume both control and the fiscal responsibility for the continuation of such programs...."

The implications of the State's position were addressed head-on by the dissent from the denial of rehearing en banc in *Jenkins IX:*

> If the State's claim carries with it the unstated idea that having put the elements of a quality educational program in place it may now take its money and exit, stage left, leaving the KCMSD to finish the scene alone, I believe that partial unitary status is not at hand. But, if an equal opportunity to receive a quality education is now permanently available to each student in the KCMSD, and is thus available to erase, if the opportunity is reasonably pursued, the vestiges of past discrimination, then unitary status has been reached and control should be relinquished by the federal courts to the state and local governments.

19 F.3d at 404 (8th Cir.1994) (Beam, J. dissenting, joined by Bowman, Wollman, Loken and Morris Sheppard Arnold, JJ.).

The State's position has simply been that its obligation for these programs is concluded and, in the colorful wording of the dissent, that it should "now take its money and exit, stage left." *Id.* This is precisely the meaning of the State's argument that its responsibility and obligation should be terminated. This has been rejected by the judges voting to deny rehearing en banc, and most tellingly by the five judges joining in the dissent to denial of rehearing.

Even when the State makes its alternative argument that if the programs are not terminated, they should be phased out gradually, the result would be increased financial burden on KCMSD. This would raise a serious possibility of substantial elimination or disruption of the quality education programs. Again, the dissent from the denial of rehearing explicitly stated in *Jenkins IX* that "equal opportunity to receive a quality education" should be *"permanently* available to each student in the KCMSD." 19 F.3d at 404 (emphasis added).

So far as the State is concerned, the crux of its responsibility for the *Milliken II* programs is funding. KCMSD must administer and operate these programs. The State seeks termination of the obligation to fund its share of the cost of these programs. The problem that remains, as the district court has been so mindful during the course of this litigation, is the KCMSD's ability to fund these programs.

As we mentioned in *Jenkins IX,* the district court has called for the parties to submit plans for financing "the magnet schools and the entire school district at a level commensurate with the current funding or at least at a level where the same quality of both facilities and instruction may be maintained," assuming withdrawal of court-ordered fundings within three, five, seven and ten years, alternatively. Order of April 16, 1993, slip op. at 21. The court's order has thus focused sharply on the *Freeman–Dowell* issues. The language of the district court's order in calling for such proposals is sufficiently broad to cover both the phase-out of the magnet school program funding and the *Milliken II* funding.

We are aware that the parties have now made filings with the district court pursuant to the April 16, 1993 order, and we presume that the district court will in time conduct hearings on these issues. In *Jenkins IX,* we outlined many of those considerations:

> Among the factors which must inform *the sound discretion* of the court in ordering partial withdrawal are the following: whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; whether retention of judicial control is necessary or practicable to achieve compliance with the decree in other facets of the school system; and whether the school district has demonstrated, to the public and to the parents and students of the once disfavored race, its good faith commitment to the whole of the court's decree and to those provisions of the law and the constitution that were the predicate for judicial intervention in the first instance.

11 F.3d at 763–64 (quoting *Freeman,* —— U.S. at ——, 112 S.Ct. at 1446 (emphasis added in *Jenkins IX* )). We framed the inquiry as outlined in *Dowell:*

> [T]he Supreme Court stated that in determining whether there was constitutional

compliance in a school desegregation case, the district court "should address itself to whether the Board had complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination had been eliminated to the extent practicable...."

*Jenkins IX,* 11 F.3d at 763 (quoting *Dowell,* 498 U.S. at 249–50, 111 S.Ct. at 637–38).

The State argues that it has demonstrated its good faith commitment to all of the court's decrees, and that its objection to numerous aspects of the desegregation program in litigation does not negate such commitment or reflect an unwillingness or intransigence toward achieving the goal of providing equal educational opportunity. It argues that it has clearly met the Supreme Court standards for good faith commitment. In essence, the State is asking this court to determine an issue which the Supreme Court in *Dowell* and *Freeman* has made clear is an issue for factual determination by the district court. As we said in *Jenkins IX,* and as the record reflects in the appeal before us, the State has not attempted to make a factual showing on this issue for determination by the district court. 11 F.3d at 765. This issue must first be developed by the district court.

When the district court considers the *Freeman* and *Dowell* issues drawn into sharp focus by its order of April 16, 1993, and now briefed in detail by the parties, we are satisfied that the court will be mindful of its responsibility to make detailed fact-findings as it considers the several inquiries required by *Freeman* and *Dowell.* The long history of this litigation demonstrates that that order will likely be the subject of an appeal, and the district court will render substantial assistance to review on appeal by making a full and complete record. We are confident that when the district court's order is entered, we will have an adequate record before us for our review.

## II.

The State also argues that passage of Missouri Senate Bill 380 requires an adjustment in the State's desegregation liability. Senate Bill 380 counts a full-time kindergarten child as one student for purposes of computing the foundation formula aid for school districts in Missouri, whereas the earlier formula counted such children as one-half a student. The State currently pays part of the cost of full-day kindergarten as a *Milliken II* quality education cost. As a result of the combination of Senate Bill 380 and the State's *Milliken II* obligations, the State argues that KCMSD will receive payments greater than the total cost of the full day kindergarten program, and that this is a windfall.

It must first be recognized that the funding under Senate Bill 380 measured by full-day kindergarten students need not be spent on kindergarten programs. It is simply a way of measuring allocations of general state aid that can be used for any school purpose.

The district court recognized that the future impact of Senate Bill 380 was far from certain. The State's witnesses testified that the exact amount KCMSD would receive could be significantly different due to a change in the method by which all students are counted, with the new system relying more heavily on daily attendance than the old system. There is a gradual phase-in of Senate Bill 380 formula in increments of 25% over a four year period, and the new formula would not be entirely implemented until the 1996–97 school year. Further, the appropriation process could increase or decrease the amount of money available, as could the amounts withheld for growth. In addition, there are uncertainties due to the state finance litigation.

These uncertainties are reason enough for affirming the district court's decision to reject the State's argument. Exactly what KCMSD may receive and when it will receive it because of change in the foundation formula is yet to be determined.

The State has not demonstrated that the district court made findings of fact that were clearly erroneous, or abused its discretion in rejecting the State's request to allow an offset of the full-day kindergarten monies to reflect amounts received under Senate Bill 380.

We affirm the order of the district court.